**UNITED STATES of America**

v.

**Dempsey WASHINGTON, Defendant.**

**Criminal Action No. 00–17.**

United States District Court,
E.D. Pennsylvania.

Oct. 6, 2006.

Christopher R. Hall, U.S. Attorneys, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM & ORDER*

KATZ, Senior District Judge.

On November 14, 2000, Dempsey Washington was sentenced to sixty-four (64) months imprisonment, followed by five years of supervised release for armed bank robbery, in violation of 18 U.S.C. § 2113(d). Defendant additionally was ordered to observe all rules specified by the Probation Office and follow the Special Conditions set forth at the time of sentencing.[1] Defendant completed his imprisonment term on August 4, 2004 and began his period of supervised release. Now before the court is a Petition for Revocation prepared by the Probation Office on March 7, 2006. Upon consideration of the submissions of the Government attorney and the Probation Office, and after a hearing, the court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. A standard condition of Defendant's supervised release was that he not commit another federal, state or local crime.

2. On January 13, 2006, Defendant entered the PNC Bank branch located at 150 West Chelten Avenue, Philadelphia, PA and presented the bank teller with a note that read: "This is a bank robbery give up all 10 dollars 20 dollars 50 dollars and nobody will get hurt take no time."

3. The teller gave Defendant money and a "Blood Hound" GPS tracking device disguised as money with two pre-recorded $50 bait bills.

4. The "Blood Hound" GPS tracking device led the Philadelphia Police to the intersection of Germantown Avenue and Rowan Street in Philadelphia. The police scanned the area and saw Defendant in the side yard of 4339 Germantown Avenue. He was fumbling with a white container while standing near a trash can at the rear entrance. The police detained Defendant and recovered the GPS tracking device, along with one of the pre-recorded $50 bait bills.

5. Defendant signed a consent to search the house. The detectives retrieved $2,162 and the second pre-recorded $50 bait bill, lying on a bed.

6. The police transported the victim-teller to the residence. The teller identified Defendant as the man who had robbed the bank.

7. Later, at the police station, during the booking procedure, Defendant made the following statement:

> Let me tell you something. You know I did it. I know I did it. Everybody here knows I did. Technology got me. You know the only place I went wrong was by not checking the money. If I checked the money before I left the bank, I never would have gotten caught.

8. The deposits of the PNC bank were insured by the FDIC at the time of the robbery.

9. On February 1, 2006, Defendant was charged, in the United States District Court for the Eastern District of Pennsylvania, in a one-count indictment with robbing $2,292 on January 13, 2006 from the PNC Bank at 150 Chelten Avenue, Philadelphia, Pennsylvania, in violation of 18 U.S.C. § 2113(a).

10. On September 27, 2006, Defendant pleaded guilty, in the United States District Court for the Eastern District of Pennsylvania, to this charge (i.e., to robbing $2,292 on January 13, 2006 from the

---

1. These Special Conditions included requirements that Defendant pay a special assessment of $100.00 within the first six months of supervised release and to pay restitution in the amount of $787.38 to First Union Bank.

PNC Bank at 150 Chelten Avenue, Philadelphia, Pennsylvania, in violation of 18 U.S.C. § 2113(a)). On the same day, Defendant was sentenced to 120 months in prison and 3 years of supervised release, and was ordered to pay restitution in the sum of $130 and a special assessment of $100.

*Conclusions of Law*

1. Supervised release is governed by the provisions of 18 U.S.C. § 3583. In determining the modification of supervised release, the court is to consider the factors set forth in 18 U.S.C. § 3553(a)(1). *See* 18 U.S.C. § 3583(e). These factors include the nature and circumstances of the offense; the history and characteristics of Defendant; and the need for the sentence to punish, deter, incapacitate, and rehabilitate. *See* 18 U.S.C. § 3553(a). The court should also consider the types of sentences available, relevant policy statements, and the need to avoid sentencing disparities. *See id.*

2. If, after considering the foregoing factors, the court finds by a preponderance of the evidence that Defendant has committed the violation(s) alleged, the court may alter the terms of supervised release. The court may release and discharge Defendant, revoke or extend supervised release, or order electronic monitoring. *See* 18 U.S.C. § 3583(e)(1)-(4).

3. Although the Sentencing Guidelines' treatment of revocation of supervised release is advisory rather than mandatory, as noted previously, these policy statements are one of the factors the court shall consider in addressing modification of supervised release. *See United States v. Schwegel,* 126 F.3d 551 (3d Cir. 1997) (holding that supervised release provisions remained advisory after amendments to 18 U.S.C. § 3583).

4. The government established by a preponderance of the evidence that the violation of the standard condition above is a Grade A violation of the terms of Defendant's supervised release. *See id.* § 7B 1.1(a)(1).[2] Where the court chooses to revoke supervised release rather than modify its terms, the Sentencing Guidelines range is eighteen (18) to twenty-four (24) months imprisonment, as Defendant's criminal history category is III. *See id.* § 7B 1.4(a). The statutory maximum term of imprisonment upon revocation is three years, as Defendant's original offense was a Class B felony. *See* 18 U.S.C. § 3583(e)(3).

5. Upon consideration of 18 U.S.C. § 3553(a), the court revokes Defendant's supervised release and imposes a sentence of eighteen (18) months, which sentence shall be served consecutively to the 120–month sentence of imprisonment that was imposed upon Defendant by the Honorable Ronald L. Buckwalter on September 27, 2006 in CR 06–46. Defendant's repeated failure to comply with the terms of release

---

**2.** Section 7B 1.1(a)(1) defines a Grade A violation as, *inter alia,* "conduct constituting [ ] a federal, state, or local offense punishable by a term of imprisonment exceeding one year that [ ] is a crime of violence". *Id.* Section 4B 1.2 of the Sentencing Guidelines defines a "crime of violence" as, *inter alia,* "any offense under federal or state law, punishable by a term of imprisonment exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* The Application Note

1 to § 4B 1.2 makes it clear that robbery is a crime of violence. *Id.*

Defendant has pleaded guilty to robbing a bank in violation of 18 U.S.C. § 2113(a). Since bank robbery is a federal crime of violence punishable by up to 20 years in prison, the court finds that the government has established by a preponderance of the evidence that the violation of the standard condition above is a Grade A violation of the terms of Defendant's supervised release.

indicates that continued modification of those terms would be ineffective. The court does not impose a further term of supervised release following the conclusion of this sentence.

An appropriate Order follows.

### ORDER

**AND NOW,** this 6th day of October, 2006, upon consideration of the Petition for Revocation of Supervised Release, the Government's Proposed Findings of Fact and Conclusions of Law, and after a hearing, it is hereby **ORDERED** that the Petition is **GRANTED** as follows:

1. Defendant's supervised release is **REVOKED.**

2. Defendant is committed to the custody of the United States Bureau of Prisons for a term of eighteen (18) months, which sentence shall be served consecutively to the 120–month sentence of imprisonment imposed upon Defendant by the Honorable Ronald L. Buckwalter on September 27, 2006 in CR 06–46; and

3. There shall be no further supervised release after Defendant's release from imprisonment.